Robert COOK *v.*
ABF FREIGHT SYSTEMS, INC., Self-insured Employer

CA 04-266                                    194 S.W.3d 794

Court of Appeals of Arkansas
Opinion delivered October 6, 2004

[Rehearing denied November 10, 2004.]

*Hilburn, Calhoon, Harper, Pruniski & Calhoon, Ltd.*, by: *David M. Fuqua* and *Patrick L.Spivey*, for appellant.

*Wright, Lindsey & Jennings, LLP*, by: *John D. Davis*, for appellee.

ANDREE LAYTON ROAF, Judge. Appellant, Robert Cook, appeals from the Workers' Compensation Commission's

order denying his claim for benefits based on a finding that he was not injured while performing employment services. We affirm.

Cook suffered an electrical shock as he entered a Dallas, Texas, motel bathroom. The bathroom had a leaking light fixture, and Cook stepped in a puddle of water while turning on the light. Cook, an overnight bid driver, drove a fixed route for ABF from Little Rock, Arkansas to Dallas, Texas, dropping off and picking up freight at various VIA points. Cook would leave Little Rock at 6:00 p.m. and arrive in Dallas at approximately 1:00 or 1:30 a.m. After arriving in Dallas, he would continue to the dispatch office where he would gather his personal belongings, record the time in his logbook, and sign in. Because the Department of Transportation mandates that drivers take an eight-hour rest break, Cook was not permitted to return to Little Rock until the next day. Pursuant to DOT regulations, ABF required its drivers to take an eight-hour rest break and provided them with hotel rooms at the Days Inn Motel in Irving, Texas. Drivers were not on the clock during their rest breaks and were not being paid. However, they were expected to be "on call" at the motel. ABF made all of the arrangements and paid for the rooms. ABF also arranged transportation from the dispatch office to the hotel. If the hotel shuttle had not arrived in thirty minutes to pick up a driver, the driver punched back in.

Upon arriving at the hotel, the drivers would sign in, indicating their name and their company. ABF drivers would then wait to be called back to work. Because of his seniority, Cook had a regular route and generally did not have to wait to be called back to work. Occasionally, ABF would call him in thirty minutes before the end of his rest period. When this happened, Cook would be transported back to the dispatch office, prepare his truck for the drive back to Little Rock, and when his eight-hour rest period ended, he would clock in and begin his trip. ABF did not prohibit the drivers from leaving the hotel during their eight-hour rest period nor were they required to stay there. They were free to do as they pleased. ABF would contact the hotel and arrange for the hotel van to transport drivers back to the dispatch office. If ABF had not contacted a driver after twelve hours, then the driver would automatically go back on the clock.

On June 28, 2002, at 7:30 a.m., Cook received his scheduled wake-up call from the hotel front desk. He got up and went to the bathroom. His injury occurred as he stepped into the bathroom and reached for the light switch. Cook stepped in a puddle of water

as he reached for the light switch and suffered an electric shock. He was transported to the emergency room.

The ALJ found that Cook's injury was compensable, but the Commission reversed, finding that Cook was not performing employment services at the time of his injury. Cook brings this appeal.

When reviewing a decision of the Workers' Compensation Commission, the Court of Appeals views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission. *Sapp v. Phelps Trucking, Inc.*, 64 Ark. App. 221, 984 S.W.2d 817 (1998). This court must affirm the decision of the Commission if it is supported by substantial evidence. *Id.* Substantial evidence is that evidence which a reasonable mind might accept as adequate to support a conclusion of the Commission. *General Electric Railcar Repair Servs. v. Hardin*, 62 Ark. App. 120, 969 S.W.2d 667 (1998). The issue on appeal is not whether the appellate court might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, the appellate court must affirm its decision. *Minnesota Mining & Manuf. v. Baker*, 337 Ark. 94, 989 S.W.2d 151 (1999).

Act 796 of 1993 defines a compensable injury as "[a]n accidental injury . . . arising out of and in the course of employment. . . ." Ark. Code Ann. § 11-9-102(4)(A)(i) (Repl. 2002). A compensable injury does not include an "[i]njury which was inflicted upon the employee at a time when *employment services* were not being performed. . . ." Ark. Code Ann. § 11-9-102(4)(B)(iii) (Repl. 2002) (emphasis added). Act 796 does not define the phrase "in the course of employment" or the term "employment services." *Pifer v. Single Source Transp.*, 347 Ark. 851, 856, 69 S.W.3d 1, 3 (2002) (citing *Olsten Kimberly Quality Care v. Pettey*, 328 Ark. 381, 944 S.W.2d 524 (1997)). Therefore, the supreme court has interpreted the term "employment services" as performance of something that is generally required by an employer. *Pifer, supra.* Our courts use the same test to determine whether an employee is performing "employment services" as they do when determining whether an employee is acting within "the course of employment." *Pifer*, 347 Ark. at 857, 69 S.W.3d at 4. "The test is whether the injury occurred 'within the time and

space boundaries of the employment, when the employee [was] carrying out the employer's interest directly or indirectly.' " *Id.*

In *Pifer, supra,* the supreme court noted that the activity of seeking toilet facilities, although personal in nature, has been generally recognized as a necessity such that accidents occurring while the employee is on the way to or from toilet facilities or engaged in relieving herself arise within the course of employment. Employers provide bathrooms because work interruptions would occur if the employees were forced to leave the premises to find a public restroom. The employee in *Pifer, supra,* was injured while returning to work from an employer-provided restroom. The court held that Pifer's restroom break was a necessary function and directly or indirectly advanced his employer's interest. The record showed that Pifer's conduct was permitted, if not authorized, and that the employer provided the restroom. The court concluded that Pifer's injury was compensable because it occurred while he was performing employment services. *See also Collins v. Excel Specialty Prods,* 347 Ark. 811, 69 S.W.3d 14 (2000) (holding that the employee was performing employment services when she was injured after returning from a restroom break in the employer-provided restroom).

However, in *Kinnebrew v. Little John's Truck, Inc.,* 66 Ark. App. 90, 989 S.W.2d 541 (1999), this court affirmed the Commission's decision that a shower is not inherently necessary for the performance of the job a trucker was hired to do. In *Kinnebrew, supra,* the appellant, a truck driver, had stopped over at a rest stop for his eight-hour rest. While at the truck stop, the appellant cleaned his truck, washed laundry, and took a number for the shower facility. When a shower became available, he entered the stall, slipped and fell onto a slippery substance. The court held that the appellant was not performing employment services when he was injured while taking a shower while off duty. The court stated that showering is not inherently necessary for the job he was hired to do, and that the performance of such personal tasks, even while on the employer's premises, was not performing employment services under Act 796 of 1993.

■■ In this instance, there was no evidence that Cook's entry into the bathroom was for any reason other than to attend to his own personal needs. While the supreme court held in *Pifer* that the use of "toilet" facilities while at work is a necessity and that an employee who is injured while using the toilet during working hours is performing employment services, the case before us is

91

readily distinguishable from *Pifer, supra*. Here, Cook was "off the clock" and taking a mandated eight-hour overnight rest break when the accident occurred. There is no suggestion in the record that his planned use of the bathroom upon arising at 7:30 a.m. in the morning in question was in any respect different from his routine morning preparations, whether he was on the road or at home. We thus conclude that the facts of this case are most analogous to *Kinnnebrew, supra*, and that the performance of routine personal grooming and related tasks upon arising in the morning, even under the circumstances present in this case, is not the performance of employment services for the purposes of compensability.

Affirmed.

BIRD and CRABTREE, JJ., agree.