Cite as 2023 Ark. App. 458

# ARKANSAS COURT OF APPEALS
## DIVISION II
No. CV-22-586

|  |  |
|---|---|
| MINERAL SPRINGS - SARATOGA SCHOOL DISTRICT; AND ARKANSAS SCHOOL BOARDS ASSOCIATION<br>APPELLANTS | Opinion Delivered October 18, 2023<br><br>APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION<br>[NO. G806592] |
| V. |  |
| BRON BELL; AND DEATH AND PERMANENT TOTAL DISABILITY TRUST FUND<br>APPELLEES | AFFIRMED |

**CINDY GRACE THYER, Judge**

Appellants Mineral Springs - Saratoga School District and the Arkansas School Boards Association (collectively, the District) appeal a decision of the Arkansas Workers' Compensation Commission finding that appellee Bron Bell suffered a compensable injury while performing employment services. We affirm.

The facts before us are relatively undisputed. In 2018, Bell was employed by the Mineral Springs - Saratoga School District as an agricultural instructor and facilities administrator. His day consisted of teaching six classes, with one prep period. In addition to his instructional responsibilities, he was responsible for ensuring that District facilities were in compliance with Arkansas law. His normal working hours were between 7:00 a.m. and 4:00 or 4:30 p.m. He was a salaried employee, and while he may have been required to clock

in and out in the morning and afternoon, he was not required to clock out during his thirty-minute lunch break. Bell had shop classes both immediately before and after his lunch break. The shop students would first meet in the classroom, where Bell would take roll, and then they would all proceed to the shop, at which time he would issue tools to them. Because safety was a priority, at the end of each shop class, Bell was responsible for making sure all the tools were brought back into the classroom, placed where they belonged, and checked in to ensure the tools were ready for the next class. He would also make sure everyone had exited the building before he left for lunch. Bell estimated he had only fifteen minutes remaining for lunch after his shop duties were completed, even though state law requires the lunch break to be a thirty-minute duty-free lunch. Bell was unaware of this requirement until after his accident. He also was unaware at the time of the accident that he could leave the premises for lunch. It was his further understanding that, while on campus, he was obligated to counsel students, prevent fights, and report any suspected abuse.

On September 27, 2018, while on his lunch break, Bell was injured as he exited the school cafeteria. Bell had just finished teaching one of his shop classes and had hurried to the cafeteria, which was in another building, to grab his lunch. Because he only had a short time for lunch, he intended to return to his office to eat and prepare for his next class. He entered the cafeteria through a back door, where his wife, who was also a teacher, was waiting for him. She had prepared his lunch and placed it in a to-go container. She handed him the container, and he turned to exit the cafeteria.

As he was exiting the cafeteria through the back door to return to his office with his lunch, he either slipped or tripped on the outside concrete stoop, causing him to fall forward into a neighboring building. He did not fall to the ground; rather, the right side of his body hit the metal exterior wall of the building, breaking his fall. No one witnessed the accident, although a fellow teacher inside the other building heard the impact.

After steadying himself, Bell went back to his classroom and cleaned up the mess. He then reported the incident to the school nurse, who sent him to the doctor. It was later determined that he had dislocated his right shoulder.

Bell filed a claim for workers'-compensation benefits. The District controverted the claim in its entirety, alleging that Bell had not been performing employment services at the time of the accident.

A hearing before an administrative law judge (ALJ) took place on October 6, 2021. Bell testified to the foregoing facts and that he considered himself to be at work when the accident occurred because he believed that if he was on campus, he was at work and responsible for the students. He further testified that he did not have any official duties assigned during his lunch break, and while students may filter into the classroom a few minutes early, he did not issue tools or begin instruction until class started. He did, however, have to remain in his classroom to check in and put up the tools from his previous class and prepare for his next class before he left for lunch. The District then called its superintendent, Billy Ray Lee, Jr., as a witness. Lee testified that Arkansas law requires the District to provide teachers with at least one thirty-minute duty-free period during the day during which they

have no responsibilities. Since Lee was not superintendent when Bell was injured, he could not independently verify that the former administration had adhered to that requirement. He noted that Bell had testified that he had no dedicated responsibilities during his lunch break, which was consistent with state law. He further testified that teachers are not required to remain on campus during their lunch break and could leave to run personal errands so long as they returned to their classrooms before the end of the thirty-minute period.

After the hearing, the ALJ issued an opinion concluding that Bell had not sustained a compensable injury. The ALJ determined that Bell had not been performing employment services at the time of the accident because he was not directly or indirectly advancing the interests of his employer when the incident occurred. Instead, Bell was "on a personal mission to return to his office for the single purpose to engage in a personal endeavor, which was to eat his lunch."

Bell appealed the denial to the Full Commission. The Commission reversed the decision of the ALJ and found that Bell had suffered a compensable injury. In so finding, the Commission stated:

> In the case at bar, the claimant was within the time and space boundaries of his employment, he was paid for his time and, even though he was on his lunch break, he was on the jobsite when he sustained his injury. Additionally, as in [*University of Arkansas for Medical Sciences v.*] *Hines*, [2019 Ark. App. 557, 590 S.W.3d 183], the claimant was required to leave his break and return to work if he was needed to assist with a student incident. The claimant testified that he was required to assist if, for example, a fight between students started. The claimant testified further that he had assisted breaking up a fight on his lunch break in the past. Also, it is significant to note that up to the time of this work accident the claimant, and quite possibly other school employees, believed they were required to remain on campus during lunch. (J. Ex 1., p. 20)

4

In addition to this duty, even if he was on his lunch break, the claimant would be required to report any incidents that mandatory reporters are required to report. This fact is supported by the testimony of Billy Lee, the superintendent of the respondent school district.

. . . .

Clearly, the respondent-employer derived a benefit from the claimant remaining on campus during his lunch break. Despite claimant's lunch period being designated "duty free," clearly, he was on duty whenever he was on campus. It was of no consequence that the claimant was on his lunch break when the accident occurred because he was on call at the time. *See Univ. of Ark. For Med. Sciences v. Hines*, *supra* and *Ray*, [66 Ark. App. 177, 990 S.W.2d 558 (1999)].

The District has appealed the Commission's decision finding Bell's injury compensable. Citing *Ganus v. St. Bernard's Hospital, LLC*, 2015 Ark. App. 163, 457 S.W.3d 683, and *Robinson v. St. Vincent Infirmary Medical Center*, 88 Ark. App. 168, 196 S.W.3d 508 (2004), the District argues that Bell was on a personal errand at the time of the accident, that he had no required duties at that time, and that the District gleaned no benefit from his getting lunch; thus, Bell was not performing employment services when he fell. The District also distinguishes the three cases cited by the Commission in its opinion—*Ray v. University of Arkansas*, 66 Ark. App. 177, 990 S.W.2d 558; *Kimbell v. Ass'n of Rehab Industry*, 366 Ark. 297, 235 S.W.3d 499 (2006); and *Hines*, *supra*. The District notes that, unlike the appellant in *Ray*, Bell was not required to remain on campus to be available during his lunch break and was not required to do anything for any student or school official during that break, and unlike the appellant in *Kimbell*, he was not speaking with or assisting any student at the time of his accident. Then, in contrast to *Hines*, the District argues that Bell was not on call or on

duty during his lunch break; instead, he was duty-free and was not required to remain on campus or anywhere where students might be. The District further noted that, unlike the accident in *Hines*, Bell's accident occurred in an area where there were no students, and Bell was avoiding places where he could have assisted students. Finally, the District, citing the opinion of the dissenting commissioner, argues that, applying the Commission's standard in this case, Bell is performing employment services any time he is on campus or anywhere a student may be present, depending on how he perceives his responsibilities. This standard ignores the requirement that the employee must be doing something required by his employer for the injury to be compensable. It further argues that Bell's status as a mandatory reporter does not render his injury compensable because he is always required to report regardless of his location, and that, if this is the standard, he technically never leaves his employment and is always at work.

Relying on *Privett v. Excel Specialty Products*, 76 Ark. App. 527, 69 S.W.3d 445 (2002); *Wal-Mart Stores, Inc. v. Sands*, 80 Ark. App. 51, 91 S.W.3d 93 (2002); *Wallace v. West Fraser South*, 365 Ark. 68, 225 S.W.3d 361 (2006); and *Ray*, *supra*, Bell argues that he was performing employment services because, while on campus, he was required to assist with any problems that might arise and that he spent part of his lunch period putting shop tools safely away and preparing for his next class.

Thus, the primary issue before us is whether there was substantial evidence to support the Commission's determination that Bell was performing employment services at the time of his injury.

In reviewing a decision of the Commission, this court reviews the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirms if the decision is supported by substantial evidence. *Kroger Ltd. P'ship v. Bess*, 2018 Ark. App. 404, 555 S.W.3d 417. Substantial evidence exists if reasonable minds could have reached the same conclusion without resort to speculation or conjecture. *Id.* The issue is not whether the appellate court might have reached a different result from that of the Commission but whether reasonable minds could reach the result found by the Commission. *Id.* It is the Commission's duty, not ours, to make credibility determinations, to weigh the evidence, and to resolve conflicts in the medical testimony. *Id.*

A compensable injury includes an accidental injury causing internal or external physical harm to the body arising out of and in the course of employment and which requires medical services or results in disability or death. Ark. Code Ann. § 11-9-102(4)(A)(i) (Repl. 2012). A compensable injury does not include an injury that was inflicted upon the employee at a time when employment services were not being performed. Ark. Code Ann. § 11-9-102(4)(B)(iii). The supreme court has interpreted the term "employment services" as performance of something that is generally required by an employer. *Cook v. ABF Freight Sys., Inc.*, 88 Ark. App. 86, 194 S.W.3d 794 (2004). We use the same test to determine whether an employee was performing "employment services" as we do when determining whether an employee was acting within "the course of employment." *Id.* at 89, 194 S.W.3d 796. The test is whether the injury occurred within the time and space boundaries of the employment

when the employee was carrying out the employer's purpose or advancing the employer's interest directly or indirectly. *Id.* at 89–90, 194 S.W.3d 796.

Of all the cases cited by the District in support of reversal, *Ganus* is the most factually similar to the present case. Ganus was a nurse in a cath lab at the hospital. She argued that, although she had a nurse covering her patient when she was on her lunch hour, she was subject to being called back to the unit if there was a problem. In affirming the Commission's decision finding that she was not performing employment services when she fell in the cafeteria during her lunch break, we stated that even though there may be evidence that could support a finding different from the Commission's, such was not a proper basis for reversal. *Ganus*, 2015 Ark. App.163, at 9, 457 S.W.3d at 688. This court noted that the evidence relied on by the Commission was that Ganus was on a personal errand to retrieve food for her own benefit; the employee handbook provided that an employee should be considered to be "completely relieved" of her work responsibilities while on break; and Ganus left her patient in the hands of another employee before she went to retrieve her lunch. *Id.*

As in *Ganus*, Bell testified that he believed he was required to intervene if an issue arose while he was on campus and on his lunch break. Also as in *Ganus*, Superintendent Lee testified that Bell's lunch break was required by law to be duty-free. The similarities end there. Although Ganus argued that she was subject to being called back to the unit if there was a problem, her employee handbook indicated that an employee was considered completely relieved of his or her duties while on break. In this case, and unlike Ganus, Bell

8

testified that he was unaware that he could leave campus during his lunch break and of the requirement that he have a thirty-minute lunch break that was duty-free. Superintendent Lee could offer no testimony to the contrary.

It is axiomatic that questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Texarkana Sch. Dist. v. Conner*, 373 Ark. 372, 284 S.W.3d 57 (2008). As such, we are foreclosed from determining the credibility and weight to be accorded to each witness's testimony. *Id.* Here, there was no testimony presented to contradict Bell's testimony that he was on duty while on campus or that he was unaware of the law requiring that his lunch break be duty-free. Superintendent Lee testified that, while state law requires the District to provide Bell with a duty-free lunch period, he was not aware of the District's actual policy at the time of the injury. The Commission found Bell to be a credible witness. Thus, evidence was presented upon which the Commission could find that Bell was required to remain on campus; that he was not, in fact, duty-free during his lunch break; and that he was, therefore, performing employment services at the time of his injury.

This case is also factually similar to *Hines*, *supra*. Hines, who was a surgical-services patient-unit coordinator at a hospital, slipped and fell injuring herself while walking to the lobby during one of her breaks. She was talking on the phone to her granddaughter when she fell. She testified that she did not clock out during her breaks if she remained in the building and that, if there was an emergency and she was in the building, she was required to return to her unit. There was evidence that hospital policy required her to clock out if she

left the building during her breaks, but she testified that she was not allowed to leave. The ALJ found that Hines had failed to prove that she was performing employment services at the time of her fall. The Commission, in a split decision, reversed the ALJ finding that Hines was within the time and space boundaries of her employment. It noted she was paid for her time, she was required to leave her break and return to work if she was needed to assist with an emergency or if a trauma occurred, and even though she was not at her designated work station, she was on the jobsite when she sustained her injury.

We affirmed the Commission's decision. In doing so, we noted that Hines had testified that, during her break, she remained on duty and in the building; she was clocked in; and she remained on call and available to work. Hines testified that if she had been called to return to her desk because of an emergency or trauma, she would have been required to do so and that this had happened three or four times in the past. Given this testimony, the Commission concluded that Hines was performing employment services because the hospital derived a benefit from her "remaining in the building, immediately available to resume her duties." 2019 Ark. App. 557, at 4, 590 S.W.3d at 185. Thus, the fact that she was on a personal call at the time of her injury was of no consequence because the evidence indicated her employer required her to resume her duties when called.

Here, as in *Hines*, Bell slipped and fell while on a break and while performing a personal task. As in *Hines*, Bell did not clock out during his break, and he testified that he was required to assist with student conflicts or other emergencies if needed while on his break, which had happened at least one time. Additionally, while there was evidence that

10

Bell could leave campus during his break, and his break was required by law to be duty-free, Bell testified that he was unaware that he was allowed to leave campus or that he was relieved of his duties during that time. The State's witness could not contradict this testimony or prove that the District's policy was in compliance with the law at the time of the injury. Bell also testified that part of his lunch break was spent logging tools in and out and preparing for his next class.

As stated above, the ALJ in this case found that, under these facts, Bell failed to prove that he was performing employment services at the time of his injury. The Commission on these same facts determined otherwise. Given the facts of this case, it could easily be argued that either one of these decisions is supported by the evidence. As a result, our standard of review is critical to our analysis. We review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirm if reasonable minds could have reached the same conclusion without resort to speculation or conjecture. The issue is not whether the appellate court might have reached a different result from that of the Commission but whether reasonable minds could reach the result found by the Commission. As reasonable minds could have reached the same conclusion as that of the Commission, we affirm.

Affirmed.

BARRETT and WOOD, JJ., agree.

*Friday, Eldredge & Clark, LLP*, by: *Guy Alton Wade* and *Phillip M. Brick, Jr.*, for appellants.

11

*Laura Beth York*, for separate appellee Bron Bell.