SLIP OPINION

Cite as 2014 Ark. App. 520

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-14-277

| | |
|---|---|
| BEST WESTERN INN AND UNION INSURANCE OF PROVIDENCE/ EMPLOYERS MUTUAL CASUALTY CO. | **Opinion Delivered** October 1, 2014 |
| APPELLANTS | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. G208081] |
| V. | |
| CHRISTINA PAUL | AFFIRMED |
| APPELLEE | |

## RITA W. GRUBER, Judge

Appellants Best Western Inn and Union Insurance of Providence/Employers Mutual Casualty Co. appeal from the decision of the Arkansas Workers' Compensation Commission adopting the decision of the Administrative Law Judge (ALJ) that appellee Christina Paul was performing employment services at the time of her injury. The only issue on appeal is whether substantial evidence supports the Commission's decision. We affirm the decision of the Commission.

Appellee worked as a housekeeper for Best Western. She was injured on September 13, 2012, when she slipped and fell on water while walking down a concrete stairway headed to the laundry room. Her right knee "hit the concrete full force." Medical treatment was initially provided by appellants, but, after an investigation, appellants controverted entitlement to additional benefits. They claimed that appellee was not acting in the course

and scope of her employment at the time of the incident because she was taking food to the laundry room refrigerator for her own benefit when she fell.

At the hearing before the ALJ, the evidence established that appellee had injured her right knee in 2009 by jumping off a horse. Her treating doctor at the time recommended surgery to repair her ACL and medial meniscus, but appellee chose to put off the surgery. In March 2012, she consulted Dr. Scott Walsh, who began treating her and performed surgery on March 30, 2012. Dr. Walsh performed a right knee arthroscopy with ACL reconstruction.

Appellee testified that on September 13, 2012, she was cleaning a room and discovered she needed more towels. So she went downstairs to the laundry room to retrieve them. She testified that she was also carrying food she had found in one of the hotel rooms to put in the refrigerator in the laundry room. She denied that the food was for her own personal use, testified that she had never taken anything from a hotel room for her own personal use, and confirmed that her primary purpose in going to the laundry room was to get clean towels. After appellee fell, she reported it to the hotel manager, Jan Leach.

Ms. Leach testified that she witnessed the fall on a hotel-surveillance video and noticed that appellee had dropped food when she fell. Ms. Leach testified that it was not hotel policy or part of appellee's job to save food for a guest. Two housekeepers testified that they heard appellee scream when she fell and went to help her. They saw that she had fallen and had food in her hands. Both testified that it was not part of appellee's job to carry food to the refrigerator. Both also testified that it was part of their job to get towels from the

SLIP OPINION

laundry room.

According to records of Saline Memorial Hospital, on September 13, 2012, appellee's right knee was x-rayed and she was diagnosed with a knee sprain. She was discharged and referred to Dr. Walsh. Dr. Walsh saw appellee on September 17, 2012, and noted that she had a lot of pain and swelling. He also noted that he was "worried about ACL re-tear" and he thought that "an MRI [was] important for us to understand the extent of this injury." Appellants controverted appellee's entitlement to the MRI.

The ALJ awarded the additional treatment, finding that appellee was performing employment services at the time of the injury. The Commission affirmed the ALJ's findings, stating that the evidence showed that appellee "was carrying out the employer's purpose and advancing the employer's interests in walking to the laundry room for clean towels . . . demonstrat[ing] that the claimant was performing employment services at the time of the September 13, 2012 accident." The Commission found this to be true "whether or not the claimant was also carrying food when she slipped and fell."

On appeal, this court views the evidence and all reasonable inferences therefrom in the light most favorable to the Commission's decision and affirms that decision when it is supported by substantial evidence. *Honeysuckle v. Curtis H. Stout, Inc.*, 2010 Ark. 328, at 6, 368 S.W.3d 64, 69. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* There may be substantial evidence to support the Commission's decision even though we might have reached a different conclusion if we had sat as the trier of fact or heard the case de novo. *Id.* We will not reverse the Commission's

decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Id*. The issue is not whether the appellate court might have reached a different result from the Commission, but whether reasonable minds could reach the result found by the Commission. *Cedar Chem. Co. v. Knight*, 372 Ark. 233, 237, 273 S.W.3d 473, 475 (2008).

In order for an accidental injury to be compensable, it must arise out of and in the course of employment. Ark. Code Ann. § 11-9-102(4)(A)(i) (Repl. 2012). A compensable injury does not include an injury inflicted upon the employee at a time when employment services are not being performed. Ark. Code Ann. § 11-9-102(4)(B)(iii). An employee is performing employment services when he or she is doing something that is generally required by his or her employer. *Dairy Farmers of Am., Inc. v. Coker*, 98 Ark. App. 400, 405, 255 S.W.3d 905, 910 (2007). We use the same test to determine whether an employee is performing employment services as we do when determining whether an employee is acting within the course and scope of employment. *Jonesboro Care & Rehab Ctr. v. Woods*, 2010 Ark. 482, at 5. The test is whether the injury occurred within the time and space boundaries of the employment, when the employee was carrying out the employer's purpose or advancing the employer's interest, directly or indirectly. *Id*. The issue of whether an employee was performing employment services within the course of employment depends on the particular facts and circumstances of each case. *Id*. at 6.

Appellants first argue that the Commission's finding that appellee was acting within the course and scope of her employment is not supported by substantial evidence. Appellants

claim that appellee was not performing employment services when she was injured because she was taking food from the room of a former motel guest for her own use in violation of hotel policy. Where there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. *Walker v. Fresenius Med. Care Holding, Inc.*, 2014 Ark. App. 322, at 8, 436 S.W.3d 164, 170. Questions of weight and credibility are within the sole province of the Commission, which is not required to believe the testimony of the claimant or of any other witness but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *Id.* at 8–9, 436 S.W.3d at 170.

Appellee testified that she went to the laundry room to retrieve towels. She testified that she was also carrying food she had found in one of the hotel rooms to put in the refrigerator. She denied that the food was for her own personal use, testified that she had never taken anything from a hotel room for her own personal use, and confirmed that her primary purpose in going to the laundry room was to get clean towels. Based on the applicable standard of review, we hold that substantial evidence supports the Commission's finding that appellee was performing employment services at the time she was injured.

Appellants also contend that the award of additional medical treatment—an MRI—is not supported by substantial evidence. The law requires an employer to provide medical services that are reasonably necessary in connection with the compensable injury received by an employee. Ark. Code Ann. § 11-9-508(a) (Repl. 2012). The employee has the burden of proving by a preponderance of the evidence that medical treatment is reasonable and

5

necessary. *Stone v. Dollar Gen. Stores*, 91 Ark. App. 260, 266, 209 S.W.3d 445, 449 (2005). What constitutes reasonably necessary medical treatment is a question of fact for the Commission. *Nabholz Constr. Co. v. Gates*, 2010 Ark. App. 182, at 2.

Appellants argue that the medical evidence showed only that appellee suffered a sprain and that additional diagnostic testing is related only to the long-standing and ongoing right knee problems that resulted in her ACL reconstruction just months before the accident at Best Western. Saline Memorial Hospital diagnosed appellee with a knee sprain and referred her to Dr. Walsh, her treating orthopedic surgeon for her previous knee surgery. Dr. Walsh examined appellee, determined that she had suffered a new injury, and was worried about an ACL re-tear. In order to determine the extent of her new injury, Dr. Walsh recommended an MRI to understand the extent of the injury. We recognize that the Commission has the duty of weighing the medical evidence as it does any other evidence, and it has the authority to accept or reject medical opinions. *Coleman v. Pro Transp., Inc.*, 97 Ark. App. 338, 347, 249 S.W.3d 149, 155 (2007). The interpretation given to medical evidence by the Commission has the weight and force of a jury verdict, and this court is powerless to reverse the Commission's decision regarding which medical evidence it chooses to accept. *Hill v. Baptist Med. Ctr.*, 74 Ark. App. 250, 250, 57 S.W.3d 735, 737 (2001). We hold that substantial evidence supports the Commission's decision.

Affirmed.

WHITEAKER and VAUGHT, JJ., agree.

*Anderson, Murphy & Hopkins, L.L.P.*, by: *Randy P. Murphy* and *Kyle E. Burton*, for appellants.
*Jensen Young & Houston, PLLC*, by: *Terence C. Jensen*, for appellee.